# EXHIBIT 1

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

F.T. HOLDINGS, LLC, a Washington limited
liability company,

No. 16-2-04533-2 SEA

Plaintiff,

**COMPLAINT**

v.

RAVEN OFFSHORE YACHT SHIPPING,
LLP, a Delaware limited liability partnership;
and RICHARD GLADYCH,

Defendants.

Plaintiff F.T. Holdings, LLC alleges as follows:

## I. PARTIES

1.      Plaintiff F.T. Holdings, LLC is a limited liability company organized and existing under the laws of the State of Washington.

2.      Plaintiff F.T. Holdings, LLC, is the owner of the yacht Nanea.  The Nanea was located in Florida in July of 2015, and Plaintiff desired in the summer of 2015 to arrange for safe transport of the yacht Nanea to a harbor in Washington or in northern British Columbia.

3.      Defendant Raven Offshore Shipping LLP ("Defendant Raven") is a limited liability partnership organized and existing under the laws of the State of Delaware with its principal place of business in the State of Washington.  Defendant Raven, among other things, engages in the business of arranging for and shipping yachts as cargo from a point of origin to a desired destination.

COMPLAINT – 1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

In response to inquiries from Plaintiff, Defendant Raven proposed to make arrangements for the transport of the Nanea from Port Everglades, Florida to Chemainus, British Columbia.

4.      Defendant Richard Gladych ("Defendant Gladych") is a resident of the State of Washington.  Defendant Gladych is the managing partner of Defendant Raven.  Defendant Gladych was in regular communication with the Plaintiff regarding transport of Nanea from Port Everglades, Florida to Chemainus, British Columbia.

## II. JURISDICTION AND VENUE

5.      At all times, Defendants transacted business in King County, Washington and venue is proper here pursuant to RCW 4.12.025.

## III. FACTUAL ALLEGATIONS

6.      In July of 2015, Defendant Gladych began discussing with Plaintiff possible insurance arrangements for the transport of Nanea.  During those discussions, Defendant Gladych stated that he was an insurance broker at the time of the discussions and that there was a need for Plaintiff to obtain insurance for the Nanea for any possible damage during the voyage.  Gladych also advised Plaintiff that Gladych could obtain suitable coverage for the Nanea, that he had experience obtaining coverage for other yachts shipped as cargo, and that the insurance he would obtain would provide protection for Nanea against damage suffered during the shipment of Nanea as cargo.  Defendant Gladych also advised Plaintiff that the insurers he proposed to use had routinely provided suitable coverage for the transport of yachts as cargo and had paid for damage to yachts in prior circumstances.

7.      Defendant Gladych touted his skills, experience and expertise as a broker to Plaintiff in order to induce Plaintiff to rely on Defendant's special expertise to purchase insurance coverage for the Nanea that would be suitable for the voyage.  At the time Defendant Gladych made these representations to Plaintiff, Defendant Gladych knew that his license as an insurance broker had expired, but he did not communicate that to the Plaintiff.  Defendant Gladych also knew or should

COMPLAINT – 2

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    have known that electricity on the Nanea would be disconnected for the voyage rendering the vessel

2    unseaworthy for the purposes of insurance.  Defendant Gladych also provided a specific dollar

3    quote in July of 2015, for the appropriate coverage, which was weeks before Plaintiff had agreed

4    to and signed the shipment contract with Defendant Raven.

5         8.    Based on the representations made by Defendant Gladych, which Plaintiff justifiably

6    relied on, Plaintiff agreed to use Defendant Gladych to arrange for and obtain suitable insurance

7    coverage for Nanea during its shipment as cargo from Florida to British Columbia.  Plaintiff

8    expected and understood based on Defendants' representations, that Defendant was at the time a

9    licensed insurance broker, that he had special expertise and experience in obtaining suitable

10   insurance coverage for yachts shipped as cargo, that Defendants would obtain coverage that would

11   insure against all damage that might be suffered by the Nanea up to policy limits, and that the

12   coverage would insure the Nanea for the condition and the circumstances under which it was to be

13   shipped.

14        9.    After agreeing to Defendants proposal to obtain suitable and appropriate coverage

15   for the Nanea, Plaintiff signed a Yacht Shipment Contract with Defendant Raven on or about

16   August 13, 2015.

17        10.   On or about September 2, 2015, the yacht Nanea was loaded for shipment on a

18   transport carrier.  During the loading, Defendant Raven directed that all electricity on the Nanea be

19   disconnected for the voyage so that the Nanea would become a "dead" boat for shipment.  As a

20   result of those instructions, all electricity was disconnected and the bilge pumps on the Nanea

21   became inoperative.

22        11.   The Nanea was transported as cargo from Florida to British Columbia.  During the

23   voyage the Nanea took on internally significant amounts of water.  When Nanea arrived in

24   Chemainus, British Columbia, and was off-loaded, it was discovered that it had suffered substantial

25

COMPLAINT – 3

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  damage during the voyage due to the water that had collected and remained in the vessel.  The

2  repair of the damage has cost approximately $300,000.

3      12.   Plaintiff made a claim on the insurance coverage that Defendants had obtained for

4  the voyage.  The insurers in the London Market denied coverage for the damage because the bilge

5  pumps on the Nanea had not been operating and the electricity on the vessel had been disconnected

6  at the instruction of Defendants.

7      13.   The insurance Defendants had obtained was neither suitable nor appropriate for the

8  Nanea for this voyage.  The insurers say the insurance did not cover the vessel because the

9  electricity on the Nanea had been disconnected, a condition Defendants had required and that they

10  knew and expected, or should have known and expected when they arranged for the insurance.

11          **IV. NEGLIGENCE CLAIM AGAINST DEFENDANT RICHARD GLADYCH**

12      14.   Plaintiff realleges the allegations in paragraphs 1-13 herein.

13      15.   Plaintiff alleges that Defendant Gladych acted negligently and unreasonably in

14  representing that he would obtain suitable and appropriate insurance coverage for the voyage and

15  in failing to actually obtain coverage for the Nanea that was suitable and appropriate to Nanea's

16  condition and circumstances during the voyage, namely that Nanea had no connected electricity

17  and no operating bilge pumps during the voyage.

18      16.   Plaintiff further alleges that Defendant Gladych's negligence has caused Plaintiff a

19  loss in the approximate amount of $300,000.

20              **V. NEGLIGENCE CLAIMS AGAINST DEFENDANT RAVEN**

21      17.   Plaintiff realleges the allegations in paragraphs 1-16 herein.

22      18.   Plaintiff further alleges that at all times described above, Defendant Gladych was

23  acting for and on behalf of Defendant Raven.

24      19.   As a result, Plaintiff alleges that Defendant Raven has damaged Plaintiff in the

25  approximate amount of $300,000.

COMPLAINT – 4

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## VI. NEGLIGENT MISREPRESENTATION CLAIM AGAINST
## DEFENDANT RICHARD GLADYCH

20.     Plaintiff realleges the allegations in paragraphs 1-19 herein.

21.     Plaintiff alleges that Defendant Gladych knew or should have known that the information supplied to Plaintiff, namely that Defendant Gladych was currently a licensed insurance broker and was qualified to acquire, and would in fact obtain, suitable and appropriate insurance coverage for the voyage, was false.  Defendant negligently supplied this false information in order to induce Plaintiff to enter into the Yacht Shipment Contract with Defendants.  Plaintiff reasonably relied upon the information given by Defendant Gladych in making this decision. Defendant Gladych's misinformation was the proximate cause of Plaintiff's damages, in an amount to be proven at trial.

## VII. NEGLIGENT MISREPRESENTATION CLAIM AGAINST DEFENDANT RAVEN

22.     Plaintiff realleges the allegations in paragraphs 1-21 herein.

23.     Plaintiff further alleges that at all times described above, Defendant Gladych was acting for and on behalf of Defendant Raven.

24.     As a result, Plaintiff alleges that Defendant Raven has damaged Plaintiff in an amount to be proven at trial.

## VIII. CONSUMER PROTECTION ACT CLAIM AGAINST
## DEFENDANT RICHARD GLADYCH

25.     Plaintiff realleges the allegations in paragraphs 1-24 herein.

26.     Defendant Gladych represented to Plaintiff, and represented on behalf of Plaintiff in obtaining insurance, that he had the requisite experience and was qualified to obtain suitable and appropriate coverage for Plaintiff.  Defendant Gladych further represented that he was currently a licensed insurance broker when in fact he knew his license had expired and knew that he had no authority or license to assist in procuring insurance after his broker license had expired.  Defendant Gladych knew, or had reason to know, that each of these representations and assurances were

COMPLAINT – 5

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    untrue.  Plaintiff alleges that Defendant Gladych's actions and misrepresentations constitute unfair

2    and deceptive acts or practices in the conduct of trade or commerce which affect the public interest

3    inasmuch as the business of insurance and the procuring of insurance is a matter affecting the public

4    interest.

5          27.     Such unfair and deceptive practices caused injury and damage to Plaintiff and were

6    in violation of the Washington Consumer Protection Act ("CPA").  Plaintiff is entitled to recover

7    damages and penalties pursuant to the CPA in an amount to be proven at trial.

8    **IX. CONSUMER PROTECTION ACT CLAIM AGAINST DEFENDANT RAVEN**

9          28.     Plaintiff realleges the allegations in paragraphs 1-27 herein.

10         29.     Plaintiff further alleges that at all times described above, Defendant Gladych was

11   acting for and on behalf of Defendant Raven.

12         30.     As a result, Plaintiff is entitled to recover damages and penalties pursuant to the CPA

13   in an amount to be proven at trial.

14   **X. PRAYER FOR RELIEF**

15         WHEREFORE, Plaintiff prays for the following relief:

16        1.     For a damages award in the amount of $300,000 against Defendants;

17        2.     For its costs including reasonable attorney's fees and for any and all statutory

18   penalties for each violation of the Washington Consumer Protection Act; and

19        3.     For such other additional relief as the Court deems appropriate.

20         DATED this 25th day of February, 2016.

21                         CORR CRONIN MICHELSON

22                         BAUMGARDNER FOGG & MOORE LLP

23                         *s/William F. Cronin*
                           William F. Cronin, WSBA No. 8667

24                         *Attorneys for Plaintiff*

25

COMPLAINT – 6

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

FILED

16 FEB 25 PM 4:12

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-2-04533-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| F.T Holdings, LLC | NO.   16-2-04533-2 SEA |
| Plaintiff(s), | ORDER SETTING CIVIL CASE SCHEDULE |
| vs. | |
| | ASSIGNED JUDGE: Rietschel, Jean, Dept. 36 |
| Raven Offshore Yacht Shipping, LLP & Richard Gladych | |
| Respondent(s) | FILED DATE: 2/25/2016 |
| | TRIAL DATE: 2/21/2017 |
| | SCOMIS CODE: *ORSCS |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the ***Summons and Complaint/Petition.*** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion. The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**"I understand that I am required to give a copy of these documents to all parties in this case."**

| | |
|---|---|
| PRINT NAME | SIGN NAME |

**I. NOTICES  (continued)**

**NOTICE  TO ALL PARTIES:**
All attorneys and parties should make themselves familiar  with the King County Local Rules [*KCLCR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example,  discovery must be undertaken promptly in order to comply  with the deadlines for joining additional parties, claims,  and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS,  COUNTERCLAIMS  AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims  is filed  in an existing case.

**KCLCR  4.2(a)(2)**
A Confirmation  of Joinder, Claims  and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule.  The court will  review the confirmation  of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil  Judge.

**PENDING  DUE DATES  CANCELED  BY FILING  PAPERS THAT  RESOLVE  THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims  is filed with the Superior Court Clerk's Office,  and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1)  file  such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying  the bailiff  to the assigned judge.

 Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing  a *Notice of Settlement* pursuant to KCLCR  41, and forwarding  a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims  is not filed by 45 days after a *Notice of Settlement*, the case may  be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk  is authorized by KCLCR  41(b)(2)(A)  to present an *Order of Dismissal*, without notice, for failure  to appear at the scheduled Trial Date.

**NOTICES  OF APPEARANCE  OR WITHDRAWAL  AND ADDRESS  CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office,  parties must provide the assigned judge with a courtesy copy.

 **ARBITRATION  FILING  AND TRIAL  DE NOVO POST ARBITRATION  FEE:**
A Statement of Arbitrability  must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration**  and service of the original complaint  and all answers to claims,  counterclaims  and cross-claims  have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party  filing a Statement must pay a $220 arbitration fee**. If a party seeks a trial  de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's  Office Cashiers.

**NOTICE  OF NON-COMPLIANCE  FEES:**
**All** parties will  be assessed a fee authorized by King County Code 4A.630.020  whenever the Superior Court Clerk  must send notice of non-compliance of schedule requirements  and/or Local Civil Rule 41.

**King County Local Rules are available  for viewing  at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| √ | CASE EVENTS | DATE |
|---|---|---|
| | Case Filed and Schedule Issued. | 2/25/2016 |
| √ | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR2.1(a) and Notices on page 2]. **$220 Arbitration fee must be paid** | 8/4/2016 |
| √ | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [See KCLCR 4.2(a) and Notices on page 2] | 8/4/2016 |
| | **DEADLINE** for Hearing Motions to Change Case Assignment Area [KCLCR 82(e)] | 8/18/2016 |
| | **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)] | 9/20/2016 |
| | **DEADLINE** for Disclosure of Possible Additional Witnesses [KCLCR 26(b)] | 11/1/2016 |
| | **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)] | 11/15/2016 |
| | **DEADLINE** for Change in Trial Date [See KCLCR 40(e)(2)] | 11/15/2016 |
| | **DEADLINE** for Discovery Cutoff [See KCKCR 37(g)] | 1/3/2017 |
| | **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR16(b)] | 1/24/2017 |
| | **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)] | 1/31/2017 |
| √ | **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(1)] | 1/31/2017 |
| | **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56;CR56] | 2/7/2017 |
| √ | Joint Statement of Evidence [See KCLCR 4(k)] | 2/14/2017 |
| | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusion of Law with the Clerk) | 2/14/2017 |
| | Trial Date [See KCLCR 40] | 2/21/2017 |

The √ indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.


DATED:   2/25/2016         _____

                                          PRESIDING  JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**   If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**   Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS:**   Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**
 **A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

**The form is** available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:**   Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Court website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES**
**A. Noting of Motions**
 **Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

**B. Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents:** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for non-dispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

Susan J Craighead

**PRESIDING JUDGE**

FILED

16 FEB 25 PM 4:12

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-2-04533-2 SEA

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| F.T Holdings, LLC | NO.  16-2-04533-2 SEA |
| VS | |
| Raven Offshore Yacht Shipping, LLP & I | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(TTO) -**      TORT, OTHER (MSC 2)

AREA DESIGNATION

**SEATTLE -**      Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

FILED

16 FEB 25 PM 4:20

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-2-04533-2 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

F.T. HOLDINGS, LLC, a Washington limited
liability company,

                         Plaintiff,

      v.

RAVEN OFFSHORE YACHT SHIPPING,
LLP, a Delaware limited liability partnership;
and RICHARD GLADYCH,

                         Defendants.

No. 16-2-04533-2 SEA

**SUMMONS**

**TO:**   **RAVEN OFFSHORE YACHT SHIPPING, LLP**

     A lawsuit has been started against you in the above-titled court by F.T. Holdings, LLC, Plaintiff. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

     In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the undersigned attorneys for Plaintiff within **twenty (20)** days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the Plaintiff is entitled to what is asked for because you have not responded. If you serve a notice of appearance on the undersigned attorneys, you are entitled to notice before a default judgment may be entered.

     If not previously filed, you may demand that the Plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons.

SUMMONS – 1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the

2   service on you of this Summons and Complaint will be void.

3          If you wish to seek the advice of an attorney in this matter, you should do so promptly so

4   that your written response, if any, may be served on time.

5          This summons is issued pursuant to Rule 4 of the Civil Rules for Superior Court of the State

6   of Washington.

7          DATED this 25th day of February, 2016.

8                                            CORR CRONIN MICHELSON
                                             BAUMGARDNER FOGG & MOORE LLP
9

10                                           *s/William F. Cronin*
                                             William F. Cronin, WSBA No. 8667
11                                           *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SUMMONS – 2

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1157 01 gb254p298j

FILED

16 FEB 25 PM 4:20

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-2-04533-2 SEA

1

2

3

4

5

6                     SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

7    F.T. HOLDINGS, LLC, a Washington limited
     liability company,                                No. 16-2-04533-2 SEA
8
                              Plaintiff,               **SUMMONS**
9
            v.
10
     RAVEN OFFSHORE YACHT SHIPPING,
11   LLP, a Delaware limited liability partnership;
     and RICHARD GLADYCH,
12
                              Defendants.
13

14   **TO:    RICHARD GLADYCH**

15          A lawsuit has been started against you in the above-titled court by F.T. Holdings, LLC,

16   Plaintiff.  Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you

17   with this Summons.

18          In order to defend against this lawsuit, you must respond to the Complaint by stating your

19   defense in writing, and by serving a copy upon the undersigned attorneys for Plaintiff within **twenty**

20   **(20)** days after the service of this summons, excluding the day of service, or a default judgment may

21   be entered against you without notice.  A default judgment is one where the Plaintiff is entitled to

22   what is asked for because you have not responded.  If you serve a notice of appearance on the

23   undersigned attorneys, you are entitled to notice before a default judgment may be entered.

24          If not previously filed, you may demand that the Plaintiff file this lawsuit with the court.  If

25   you do so, the demand must be in writing and must be served upon the person signing this summons.

     SUMMONS – 1
                                                      **CORR CRONIN MICHELSON**
                                                      **BAUMGARDNER FOGG & MOORE LLP**
                                                      1001 Fourth Avenue, Suite 3900
                                                      Seattle, Washington 98154-1051
                                                      Tel (206) 625-8600
                                                      Fax (206) 625-0900

1    Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the

2    service on you of this Summons and Complaint will be void.

3          If you wish to seek the advice of an attorney in this matter, you should do so promptly so

4    that your written response, if any, may be served on time.

5          This summons is issued pursuant to Rule 4 of the Civil Rules for Superior Court of the State

6    of Washington.

7          DATED this 25th day of February, 2016.

8                           CORR CRONIN MICHELSON

9                           BAUMGARDNER FOGG & MOORE LLP

10                       *s/William F. Cronin*

                             William F. Cronin, WSBA No. 8667

11                       *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SUMMONS – 2

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1157 01 gb2556295z

THE HONORABLE JEAN RIETSCHEL

1

2

3

4

5

6

7                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8   F.T. HOLDINGS, LLC, a Washington limited
    liability company,                                No. 16-2-04533-2 SEA
9
                              Plaintiff,             **ACCEPTANCE OF SERVICE**
10
11          v.

12  RAVEN OFFSHORE YACHT SHIPPING,
    LLP, a Delaware limited liability company;
13  and RICHARD GLADYCH,

14                            Defendants.

15          Please take notice that, in the above-captioned matter, John Gladych, attorney at law, is

16  authorized to and hereby does accept service of process, including the Civil Case Schedule,

17  Summons and Complaint, on behalf of Defendant Richard Gladych.   John Gladych is also

18  authorized to accept service on behalf of Raven Offshore Yacht Shipping, LLP moving forward.

19

20          DATED this  29  day of February, 2016.

21

22

23                                          John Gladych
                                            Attorney for Defendants
24

25

ACCEPTANCE OF SERVICE – 1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1157 01 gb26ct29tp

**FILED**

16 MAR 08 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-2-04533-2 SEA

F.T. Holdings LLC               Plaintiff

NO. 16-2- 04533-2 SEA

vs.
Raven Offshore Yacht   Defendant

**RETURN OF SERVICE**

## I. STATEMENT

The undersigned STATES that:

1. 1    I am a citizen of the State of Washington, I am over the age of 18 years, and I am not a party to this action.

1. 2    I served _RAVEN OFFSHORE YACHT SHIPPING LLP_ with the following:
         (NAME OF PARTY / WITNESS SERVED)

☐ notice of small claim
☑ civil summons and complaint
☐ subpoena
☑ other: _CASE COVER SHEET, CASE SCHEDULE_

1. 3    The date, time and place of service were:

         Date: _2/25/16_                     Time: _4:50 PM_
         Address: _701 5TH AVE #3600_
                   _SEATTLE, WA 98104_

1. 4    Service was made by delivery to ___KELLI MADDEN___
                                              (NAME)

☐ the party or witness named in paragraph 1. 2 above.
☐ a person of suitable age and discretion residing at the defendant's usual abode.
☑ the _ASSISTANT SECRETARY_
     (PRESIDENT, AGENT, SECRETARY, CASHIER, ETC.)
of _WASHINGTON CORPORATE SERVICES INC_
     (NAME OF CORPORATION)

## II. CERTIFICATION OF STATEMENT

I certify under penalty of perjury under the Laws of the State of Washington that the foregoing statement is true and correct.

DATED at ___SEATTLE, WA___, Washington on ___2/29/16___.
              (PLACE)                                    (DATE)

Fees:
    Service _____
    Mileage _____                    SIGNATURE
    Total _____          _E. THORDARSON, LEGAL MESSENGER_
                                        NAME AND TITLE

RETURN OF SERVICE

⊕  KCDCF #26/01

# EXHIBIT 2

## YACHT SHIPMENT CONTRACT

**Paragraph 1.**     <u>**Agents**</u>**: Raven Offshore Yacht Shipping, LLP (Seattle)**

**Paragraph 2.**     <u>**Place and Date of Contract**</u>**:Seattle, WA, 07 Aug 2015**

**Paragraph 3.**     <u>**Carrier**</u>**:**     Raven Offshore Yacht Shipping, LLP
                                    2288 W. Commodore Way ste 205
                                    Seattle, Washington U.S.A. 98119

**Paragraph 4.**     <u>**Yacht Owner/Consignee**</u>**: F.T. Holdings, LLC, 680 Spring Hill Road, Lima, MT 59739 (Gordon Smith)**

**Paragraph 5.**     <u>**Vessel's Name**</u>**: Thorco Clairvaux**

**Paragraph 6.**     <u>**Approximate Time for Shipment**</u>**: 28 Aug – 08 Sep, 2015**

**Paragraph 7.**     <u>**Load Port**</u>**: Port Everglades, FL**

**Paragraph 8.**     <u>**Discharge Port**</u>**:  Chemainus, BC Canada**

**Paragraph 9.**     <u>**Description of the Yacht by Yacht Owner**</u>**: 87 Queenship M/Y Hin# QCHHG302M01A**

**Paragraph 10.**     <u>**Total Transport Price (Inc. Cargo Insurance)**</u>**: 101,480.00 USD**

                     Basis   water/water,   including   seafastening/unseafastening   and
Lloyd's Cargo Insurance in the amount of 2.9 Million USD value.

Carrier's demurrage rate: USD $25,000 per day/pro rata

                     Payment terms are 10% upon signing, balance due upon loading.

**Paragraph 11.**     <u>**Carriage on Deck:**</u> The Yacht Owner consents to carriage of the Yacht on deck, at the Yacht Owner's sole risk. Neither the Vessel nor the Carrier shall be liable for any loss or damage or liability of any nature no matter how caused or by whom caused, including, but not limited to, any unseaworthiness or want of fitness.

- 1 -

IT IS HEREBY AGREED that this Yacht Shipment Contract and the services called for herein shall be performed by the parties hereto subject to the Terms and Conditions of this Yacht Shipment Contract attached hereto only, which shall prevail over any prior agreements.

**CARRIER:**                                    **YACHT OWNER:**

**Raven Offshore Yacht Shipping, LLP**

By: _____                    _____

_____                        Gordon Smith
Printed Name                                    _____
                                                Printed Name
Its: _____

_____                         08/13/15    Seattle, WA
Date/Place of Signing                           _____
                                                Date/Place of Signing

RAV004 0001 of132t70dy.003CC

## TERMS AND CONDITIONS

This Yacht Shipment Contract and the Bill of Lading form are the only evidence of the Contract of Carriage.  If there is a conflict between the two, the terms of the Yacht Shipment Contract shall control.

**Section 1:  Definitions.**

a.      "Contract" means this Yacht Shipping Contract.

b.      "Carrier" means: Raven Offshore Yacht Shipping, LLP, 2288 W. Commodore Way Ste 205, Seattle, Washington U.S.A. 98119,

c.      "Yacht Owner" means: **F.T. Holdings, LLC, 680 Spring Hill Road, Lima, MT 59739 (Gordon Smith)**

d.      "Vessel" means the transportation unit(s) used for carriage under this Contract.

"Yacht" means the vessel and all of its contents as described in Paragraph 9 above.

e.      "Rider" means a person nominated by the Yacht Owner to accompany a Yacht as defined in Section 21.

**Section 2:  Scope of Contract.**

a.      This contract is between the Yacht Owner and the Carrier, to the exclusion of any other party or person.

b.      The Vessel shall, as soon as her prior commitments have been completed, proceed to the load port stated in Paragraph 7 or so near thereto as she may safely get and lie always afloat, and there load the Yacht as described in Paragraph 9, and being so loaded the Vessel shall proceed to the discharge port stated in Paragraph 8, or so near thereto as she may safely get and lie always afloat, and there discharge the Yacht.

c.      The Carrier shall, at its option, undertake to procure or to perform part of the carriage of the Yacht from the place of receipt to the place of delivery at Yacht Owner's sole risk and responsibility.

d.      The loading, stowage, lashing, securing, dunnaging and discharging of the Yacht on board the Vessel or, if applicable, any other means of transport used during the pre-carriage and/or on-carriage, shall be arranged by the Carrier at Yacht Owner's sole risk and responsibility.

e.      The intended carriage shall not be limited to the direct route but shall be deemed to include proceedings or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading and/or discharging or other cargo operations and maintenance of Vessel and crew changes.

RAV004 0001 of132t70dy.003CC

f.      The Carrier shall have the liberty of restowing the Yacht and loading and discharging other cargoes for the account of other yacht owners for ports en-route or not en-route. The parties to this Contract recognize that the carriage of the Yacht is not an ordinary commercial shipment made in the ordinary course of trade.

g.      The character and condition of the Yacht and the circumstances, terms, and conditions under which the carriage of the Yacht is to be performed reasonably justify this special Contract.

h.      The Carrier does not undertake to deliver the Yacht at the port of discharge, or place of delivery, at any particular time or to meet any particular market or use. All departure, arrival and voyage times given by or on behalf of the Carrier are estimates only and cannot be guaranteed. The Carrier without prior notice may change sailing schedules and timetables. The Carrier shall in no circumstances whatsoever be liable for any direct, indirect or consequential loss or damage caused by delay. In the event the Carrier nevertheless is held liable for delay, its liability shall be limited to a maximum of five percent (5%) of the Total Transport Price paid or payable for the carriage of the Yacht delayed.

**Section 3:  <u>Description of the Yacht.</u>**

a.      The Yacht Owner shall, upon signing of this Contract, provide the Carrier with a current general arrangement plan of the Yacht, specifying any protrusions under the keel line and indicating precisely where under the Yacht's hull the Vessel's deck supports are to be placed. Yacht Owner must disclose any other information which might affect the docking/loading arrangement on board the Vessel. It is expressly understood that the Carrier shall not be liable for any loss or damage resulting from the Yacht Owner's error, omission or misrepresentation in respect hereof.

b.      Failure to timely disclose all information referred to in the above Section shall (without prejudice to any other rights hereunder) entitle the Carrier to suspend its obligation to carry the Yacht or make additional arrangements for the account of Yacht Owner, but shall not release the Yacht Owner from its obligations under this Contract.

**Section 4:  <u>Condition of the Yacht.</u>**

a.      Yacht Owner warrants the Yacht is fit for ocean carriage and shall ensure that prior to loading, the Yacht is properly trimmed, and that the Yacht is as light as possible.  Prior to loading, Yacht Owner will secure for sea carriage any loose parts on board the Yacht.

b.      The Yacht Owner warrants and represents that the Yacht is and shall remain at all times relevant hereto free of all liens, detentions or arrests. In the event the Yacht is encumbered with an arrest or otherwise detained, Carrier shall be relieved of any and all liability to Yacht Owner resulting from said arrest or detention, and Yacht Owner shall defend, indemnify and hold the Carrier and Vessel harmless from any liability resulting therefrom, whether or not the arrest and/or detention was lawful. In the event the Yacht is encumbered with an arrest or otherwise detained, the Total Transport Price shall be considered fully earned and the Carrier shall have no further transportation obligation.

- 4 -

c.      The Yacht Owner consents to carriage of the Yacht on deck, at the Yacht Owner's sole risk. Neither the Vessel nor the Carrier shall be liable for any loss or damage or liability of any nature no matter how caused or by whom caused, including but not limited to, any unseaworthiness or want of fitness.

**Section 5:   Delivery and Redelivery, Loading and Discharging.**

a.      The Yacht Owner shall have the cargo in all respects ready for the said voyage at the Load port on the date as specified in Paragraph 6.

b.      The Carrier shall provide the Vessel stated in Paragraph 5 above and shall in its own time and at its own expense prepare the Vessel for the loading.

c.      At the load port, the Yacht shall be delivered by the Yacht Owner and the Carrier shall load the Yacht with its own gear or tackle.  The Yacht Owner shall bring the Yacht alongside the Vessel within reach of such loading equipment. The Carrier shall be responsible for providing all necessary equipment for loading, including spreader bars, lifting frames, slings, and cradles, and shall procure the necessary labor and winch men, either from the crew or from ashore, and shall pay for the same.

d.      If Yacht Owner fails to deliver the Yacht to the Load port when required/agreed, Carrier and Vessel shall be permitted to sail without the Yacht and shall be free of cost, penalty or liability; however, Yacht Owner shall remain liable to Carrier for the Total Transport Price.

e.      The Carrier shall discharge the Yacht with its own gear or tackle.  The Yacht Owner shall take delivery of the Yacht upon discharge and within reach of said gear and tackle. The Carrier shall be responsible for providing all necessary equipment for discharging, including spreader bars, lifting frames, slings and cradles, and shall procure the necessary labor and winch men, either from the crew or from ashore, and shall pay for same.

f.      Any time lost by Carrier and/or Vessel waiting for loading/discharging and/or time lost by Carrier waiting to take receipt or deliver the Yacht to be compensated by Yacht Owner at the applicable demurrage rate as set forth in Paragraph 10 above.

g.      Loading/Discharging will be during daylight hours only and always at the discretion of the Vessel's Master.

h.      The date for shipment indicated in Paragraph 6 above and in any other documentation or information distributed by the Carrier or its disclosed agents is approximate. The Carrier and its agents specifically do not warrant the date the Yacht will be loaded or discharged. As such, the Carrier, the Vessel and Yacht Owner agree that no claims for loss of use or other consequential damages shall be valid or enforceable against the Carrier or the Vessel. Yacht Owner specifically waives, by execution hereof, any claim for loss of use or other consequential damage against the Carrier or the Vessel arising out of a delay in the performance of this Contract.

i.      The Yacht Owner or his agent shall take delivery of the Yacht as fast as the Vessel can discharge, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Yacht Owner or his agent fails to take delivery of

the Yacht, the Carrier's discharging of the Yacht shall be deemed fulfillment of the contract of carriage. If the Yacht Owner or his agent fails to take delivery of the Yacht as fast as the Vessel can discharge, the Yacht Owner shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier, and, in addition, the Yacht Owner shall pay to Carrier demurrage at the rate stipulated in Paragraph 10 above for the period of any delay. All delivery takes place at the end of the Vessel's hook unless otherwise specified.

       j.      The securing of the Yacht is to be accomplished to Master's sole satisfaction by the Carrier. Any time and expense of additional Yacht securing required by the Yacht Owner or Yacht Owner's representative shall be for Yacht Owner's account.

**Section 6:  Itinerary.**

       a.      The schedule of the itinerary shall be advised to the Yacht Owner as early as possible together with prompt advice of any amendments thereto.

       b.      The Carrier shall be entitled to exercise the liberty to deviate as provided in the Hague-Visby Rules at any time without notice to the Yacht Owner.

**Section 7:  Stowaways, Drugs, Contrabands and Alcohol.**

       a.      The Yacht Owner warrants that at the time the Yacht is presented to the Carrier and all times thereafter, there will be no arms, ammunition, stowaways, hazardous goods, contraband and/or illegal drugs or alcohol aboard the Yacht, and the Yacht Owner will, prior to loading, sign the declaration form as attached to this Contract, which will be fully incorporated into this Contract. The Yacht Owner will indemnify, defend and hold harmless the Carrier against any consequences of non-compliance with aforementioned.

       b.      In the event that contraband and/or unmanifested drugs or goods are found to have been shipped as part of the Yacht Owner's goods and/or in the Yacht Owner's Yacht on board the Vessel, any fines or imposts levied and legal and all other costs incurred, including, but not limited to, loss of time for the Vessel, shall be for the Yacht Owner's account, and the Yacht Owner shall on demand provide the security required to enable the Vessel to sail. However, if it can be established that the presence of contraband and/or unmanifested drugs or goods was due solely to the act, neglect or default by the Carrier, their servants, agents or subcontractors, such fines or imposts levied, and legal and other costs incurred, shall be for the Carrier's account.

       c.      In the event that any competent authority executes an investigation in connection with the suspected presence of arms, ammunition and/or illegal drugs or alcohol aboard the Yacht, and which affects the shipping schedule of the Carrier, the Carrier will be entitled to take all reasonable measures to protect its interest at the Yacht Owner's expense without releasing the Yacht Owner of any of its obligations under this Contract.

**Section 8:  Indemnity.**

       a.      The Yacht Owner undertakes that no claim or allegation shall be made against the Carrier or any servant, agent or subcontractor of the Carrier by any person whomsoever, including the Yacht Owner, which imposes or attempts to impose upon the Carrier or any such servant, agent

RAV004 0001 of132t70dy.003CC

or subcontractor or any vessel owned by any of them, any liability whatsoever in connection with the Yacht or its carriage (even if such liability arises wholly or in part by reason of the act, neglect or default of the Carrier or of such servant, agent or subcontractor), and in the event of any such claim or allegation nevertheless being made, the Yacht Owner shall indemnify the Carrier and such servant, agent or subcontractor against all consequences whatsoever thereof.

b.      Nothing in this Section shall preclude any claim made by the Carrier of any property on board the Vessel for a General Average contribution in accordance with the York-Antwerp Rules 1994.

c.      If the Carrier is not the actual owner of the Vessel, the provisions of this Section 8 shall also apply to the actual owner of the Vessel, its servants, agents and subcontractors in the same manner as they apply to the Carrier, its servants, agents and subcontractors.

**Section 9:  Jurisdiction, Applicable Law and Time for Suit.**

a.      Disputes arising from this Contract which cannot be settled amicably shall be referred exclusively to arbitration in Seattle, Washington, U.S.A.

b.      Arbitration in Seattle, Washington, U.S.A., will be conducted in accordance with the Rules of the Maritime Arbitration Association of the United States. Insofar as anything has not been dealt with by the terms and conditions of this Contract, the Federal law of the United States of America shall apply. The language of the arbitration proceedings shall be English.

c.      The Carrier, the Vessel, its servants, crewmembers, agents or subcontractors shall in every event be discharged from all liability whatsoever in respect of the Yacht and the Contract unless arbitration is commenced within one (1) year of the Yacht's delivery or the date it should have been delivered.

**Section 10:  Insurance and Liability – Knock for Knock.**

a.      The Carrier shall be liable for any claims arising as a result of death or injury of any of the Carrier's employees, servants, agents or subcontractors and their employees; which shall be for the account of Carrier, without recourse to the Yacht Owner, its servants or agents or insurers.  The Carrier shall defend, indemnify and hold harmless the Yacht Owner from and against any and all claims, losses, costs, damages and expenses of every kind and nature arising from the foregoing.

b.      Throughout the duration of this Contract, the Carrier shall procure and maintain adequate insurance, covering the risks the Carrier has assumed under this Contract.

c.      The Yacht Owner shall be liable for:

(1)      any loss or damage or delay, howsoever caused and of whatever nature, to or sustained by the Yacht (including damage to the Yacht's interior), and including any property on board the Vessel, which is operated, owned, hired or leased by the Yacht Owner, its employees, servants, agents or subcontractors, regardless of whether such property is to be shipped or not and

- 7 -

regardless of whether such damage was caused by the negligence of the Carrier, the Vessel, its servants/crewmembers, agents or subcontractors;

(2)     wreck removal of the Yacht and the expense of moving, lighting or buoying the Yacht;

(3)     any claims arising as a result of death or injury of the Yacht Owner, or any of the Yacht Owner's employees, servants, agents or subcontractors and their employees;

(4)     any consequential loss, costs and damages consequent upon loss, damage or delay (including delay resulting from delayed shipment) to the Yacht;

all of which shall be for the account of the Yacht Owner, without recourse to the Carrier or the Vessel, its servants or agents or insurers.

The Yacht Owner hereby waives any claim for consequential damages whatsoever and agrees to defend, indemnify and hold harmless the Carrier, the Vessel and any of their servants from and against any and all claims, losses, costs, and damages, including attorneys' fees and expenses of every kind and nature arising from the foregoing.

d.      Throughout the duration of this Contract, the Yacht Owner shall maintain adequate insurance, covering the risks the Yacht Owner has assumed under this Contract, including but not limited to Marine Cargo Insurance and Marine Liability Insurance, naming the Carrier, its employees, servants, agents and its subcontractors as additional assureds and waiving all rights of subrogation against them.  The Yacht Owner's insurance must also include coverage for General Average contribution.

e.      Under no circumstances shall the Carrier, the Vessel and/or their servants and any and all of their respective managing agents, agents, sub-agents, servants, employees, contractors or subcontractors to any level be held liable for delay, loss of use, incidental or consequential damages.

f.      Notwithstanding the foregoing, in case and to the extent that any applicable law provides for any additional period of responsibility, the Carrier shall be entitled to every right, defense, exception, liberty or limitation provided elsewhere in this Contract.

g.      Any provision of this Contract to the contrary notwithstanding, the Carrier shall have the benefit of all limitations of, and exemptions from, liability accorded to the owners or chartered owners of vessels by any applicable statute or rule of law for the time being in force, and the same benefits apply regardless of the form of signatures given to this Contract. No part of this Contract is intended to be a personal contract.

h.      In case of carriage to or from the United States and only insofar as COGSA and/or the Harter Act applies, neither the Carrier, the Vessel nor any and all of their respective servants shall in any event be or become liable for any loss and/or damage to or in connection with the transportation of the Yacht in an amount exceeding US $500 per package (Yacht), lawful money of the United States of America, or in case of goods not shipped in packages, per customary freight unit (Yacht), or the equivalent of that sum in other currency, unless the nature and value of such

- 8 -

goods have been declared by the Yacht Owner before shipment and inserted in the shipping documents, and the additional freight thereon has been paid by the Yacht Owner. This declaration, if embodied in the shipping documents, shall be prima facie evidence, but shall not be conclusive on the Carrier. In case the value of the Yacht has been declared, the Total Transport Price shall be increased by ten percent (10%) of the declared value.

**Section 11:   Liberties Provision.**

a.      The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property. The intended voyage shall not be limited to the direct route, but shall be deemed to include any proceeding to, returning to, stopping or slowing down at, or off any ports or places for any purpose including, but not limited to, maintenance and safety of Vessel and crew.

b.      The Carrier shall not be responsible for any loss, damage or delay caused or sustained by the Yacht Owner by reason of the Carrier exercising any of the liberties of this clause which shall in no way constitute a deviation. In the event the Carrier will nevertheless be held liable for delay, its liability shall be limited to a maximum of five percent (5%) of the Total Transport Price actually paid under this Contract.

c.      The Carrier may at any time and without notice to the Yacht Owner:

(1)      Use any means of transport whatsoever;

(2)      Transfer the Yacht from one conveyance to another, including transshipment or carrying the Yacht on a vessel other than the Vessel named in the Yacht Shipping Contract or by any other means of transport whatsoever and even though transshipment or forwarding of the Yacht may not have been contemplated herein;

(3)      Load and unload the Yacht at any port or place and store the Yacht at any such port or place for the account of the Yacht Owner, whether en-route or not en-route.

d.      If in the opinion of the Carrier any unanticipated circumstances arise, such as but not limited to, change in regulations, change in shipping schedules, extraordinary delays, orders or directions by authorities and/or underwriters, strikes, warlike operations, including but not limited to, acts of piracy, difficulties to enter into ports for any reason, or any other event that may influence the voyage before loading of the Yacht, the Carrier shall have the option of cancelling this Contract whereupon any prepaid freight shall be repaid to the Yacht Owner less any costs incurred by the Carrier after which each party shall be released from any and all of its obligations under this Contract. If any unanticipated circumstances arise after loading of the Yacht, the Carrier shall be at liberty to discharge the Yacht at the port of loading or any other convenient port. The Yacht Owner shall be informed accordingly and shall remain under obligation to pay the Total Transportation Price and any other amounts due to the Carrier under this Contract.

e.      The liberties set out in this clause may be invoked by the Carrier for any purpose whatsoever whether or not connected with the carriage of the Yacht, including but not limited to, loading or unloading the Yacht, bunkering or embarking or disembarking any person(s),

undergoing repairs, dry-docking, towing or being towed, assisting other vessels, making trial trips and adjusting instruments.

      f.     Anything done or not done in accordance with this clause or arising there from shall be deemed within the contractual carriage and shall not be deemed or otherwise held a deviation.

**Section 12:  Total Transport Price.**

      a.     The Total Transport Price (stated in Paragraph 10) consists of the freight, all lifting/lashing gear and other pertinent items in order to deliver the vessel water to water. Marine Cargo Insurance is an extra charge unless specified in Paragraph 10.

      Any dues, duties, taxes and charges which under any denomination may be levied on the Yacht shall be paid by the Yacht Owner. The Carrier shall pay all dues, duties, taxes and charges customarily levied on the Vessel.

      This Contract is cancellable and the initial payment is fully refundable until thirty (30) days prior to the first load date specified by Shipper.  Less than thirty (30) days prior to the first load date specified by Shipper, the Contract is non-cancellable by the Yacht Owner.  The balance of Total Transport Price is due and payable upon the yacht being set upon the deck of the carrying vessel.

      b.     The Total Transport Price stated in Paragraph 10 is based on the length and beam overall and weight of the Yacht provided to the Carrier by the Yacht Owner. If however the actual length and beam overall or weight differs from the length and beam overall and weight provided for by the Yacht Owner, the Total Transport Price shall be adjusted based on the rate for the actual length and beam overall and weight of the Yacht. Any additional amount arising out of or in connection with the foregoing shall be deemed part of the Total Transport Price due and payable to the Carrier as set forth in Section 12. The actual length and beam overall and weight includes swim platform, davits and bowsprit and tenders.

c.     Carrier's     banking     details     for     remittance     are:
**Corresponding/Intermediary Bank**: (if international)
Wells Fargo Bank  SWIFT CODE:  WFBIUS6S
*** Many Canadian Banks May Be Able To Send Directly to FedLine.  In that case no Corresponding/Intermediary bank is needed
**Beneficiary Bank:**
Washington First Bank
1146 19th Street NW
Washington, DC 20036
A/B/A ROUTING #:     054001699
**For Further Credit To:**
Raven Offshore Yacht Shipping, LLP
ACCOUNT #:  4507088
2288 W. Commodore Way, Ste 205
Seattle, WA 98119

- 10 -

      d.      Interest at 12% per annum shall run from the date when the Total Transport Price and charges are due, until payment is received by the Carrier.

      e.      The Yacht Owner shall be liable for all expenses caused by or incurred in extra handling or repairing of the Yacht due to excepted causes or for any reason for which the Carrier has no liability under this Contract.

## Section 13:  Termination.

Notwithstanding anything else provided herein, the Yacht Owner shall have the right to terminate this Contract prior to the Vessel's arrival at the loading port.

The following cancellation terms apply:

      a.      No refund will be paid to the Yacht Owner.

      b.      If notice of cancellation is received by the Carrier more than thirty (30) days prior to the first load date, the ten percent deposit (10%) received by the Carrier shall be returned to the Yacht Owner. If notice of cancellation is received by the Carrier less than thirty (30) days prior to the first load date, the notice of cancellation is void.

## Section 14:  Lien.

      a.      The Carrier shall have a lien on the Yacht for the Total Transport Price, dead freight, demurrage, detention, claims for damages, General Average contributions, salvage, costs, fines, expenses, duties, taxes and for all other amounts due under this Contract including costs of recovering same whether or not the Yacht is actually loaded on the Vessel.

      b.      This clause shall be without prejudice to any other rights or legal remedies afforded to the Carrier, including any maritime lien or right in rem available by statute or other law of any jurisdiction where the Yacht and/or Yacht Owner may be found. The Carrier shall be entitled to enforce its rights in any jurisdiction where the Yacht is found in accordance with the local law of that jurisdiction.

## Section 15:  Both to Blame Collision.

If the Vessel comes into collision with another vessel as a result of the negligence and/or fault of both vessels, the Yacht Owner will indemnify the Carrier against all loss or liability the Carrier owes the other vessel, not carrying the Yacht, or the other vessel's owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Yacht Owner paid or payable by the other, non-carrying vessel, or her owners and set-off, recouped, or recovered by the non-carrying vessel as part of their claim against the carrying Vessel or the Carrier. The foregoing provisions shall also apply where the Carrier, or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

RAV004 0001 of132t70dy.003CC

**Section 16:  General Average and Salvage.**

General Average shall be stated and adjusted in Seattle, Washington, U.S.A., according to York-Antwerp Rules 1994. The Yacht Owner's contribution to General Average shall be payable even when such average is the result of a fault, neglect or error of the Vessel's Master, crew or pilot. In the event of accident, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not and for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, Yacht Owner shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by Carrier, salvage shall be paid for as fully as if the salving ship belonged to strangers. Such deposit as the Carrier may deem sufficient to cover the estimated contribution of the cargo and any salvage and/or special charges shall be made by Yacht Owner before delivery.

**Section 17:  Canal Transit.**

The Total Transport Price stipulated in Paragraph 10 is based upon the Carrier paying canal tolls limited to the amount stipulated in Paragraph 10. Any increase in the canal tolls and/or any additional expenses imposed on the transportation for the canal transit actually paid by the Carrier shall be reimbursed by the Yacht Owner to the Carrier upon presentation of the Carrier's invoice.

**Section 18:  War Risks.**

If at any time before the Vessel commences loading under this Contract and/or at any stage of the voyage after the loading, it appears that, in the reasonable judgment of the master, Carrier and/or owners of the Vessel, performance of the Contract is or may expose the Vessel, her crew or Yacht to War Risks, the Carrier may give notice to the Yacht Owner cancelling this Contract, or the Carrier may refuse to perform such part of it as may be exposed to War Risks or to sign any Bills of Lading for any port or place, canal or waterway that may be exposed to War Risks.

In the event or likely event of War Risks, the Carrier may, at its option, not continue loading the Yacht or decide during the voyage to discharge the Yacht at any safe port of its choice or deviate from any normal route and any and all related costs shall be for Yacht Owner account. All other extra expenses such as costs for cancelling the Contract and/or extra War Risk insurance costs incurred in performing of the transportation and discharging of the Yacht in any port shall be paid for by the Yacht Owner and the Carrier shall have a lien on the Yacht for all sums due under this clause. In the event of the Yacht being discharged at any such safe port of Carrier's choice, the Carrier shall be entitled to Total Transport Price as if discharge had been effected at the original named discharge port.

The Vessel shall have the liberty to comply with all orders, directions, recommendations or advices as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of the Yacht or any order whatsoever from the flag state of the Vessel or any other government or supranational body including the security council of the United Nations and/or orders, directions or recommendations from war risks underwriters who have the authority to give the same under the terms of the War Risks insurance.

RAV004 0001 of132t70dy.003CC

War Risks shall include, but not be limited to, any actual, threatened or reported war; act of war; civil war; hostilities; revolution; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; blockades by any person, body, terrorist or political group which may be or become dangerous to the Vessel and/or her crew and/or the Yacht. All extra expenses, including, but not limited to, extra War Risk insurance costs, security costs and crew bonuses incurred in performance of the loading, transportation and discharging of the Yacht at the Load and/or Discharge port or in reaching or discharging the Yacht at any port shall be paid by the Yacht Owner and the Carrier shall have a lien on the Yacht for all sums due under this clause.

**Section 19:  Agency.**

In every case the Carrier shall appoint its own ship's agent both at the Load port and the Discharge port.

**Section 20:  General Strike.**

      a.      If there is a strike or lock-out affecting or preventing the actual loading of the Yacht when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Carrier shall have the option of cancelling this Contract.

      b.      If there is a strike or lock-out affecting or preventing the discharge of the Yacht on or after the Vessel's arrival at or off the port of discharge and the strike or lock-out has not been settled within 48 hours, the Carrier shall have the option of ordering the Vessel to a safe port where she can safely discharge the Yacht without risk of being detained by a strike or lock-out. The Yacht Owner will accept re-delivery at that substituted port. All conditions of this Contract shall apply to re-delivery at such substituted port.

      c.      Except for the obligations described above, neither the Yacht Owner nor the Carrier shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the Yacht.

**Section 21:  Rider.**

      a.      At the sole discretion of the Vessel Master, the Yacht Owner may nominate one person ("Rider"), provided always that the maximum number of Riders onboard the Vessel does not exceed the total number permitted by local or national regulations or any competent authorities, to accompany the Yacht during the transportation of the Yacht, in which case the Yacht Owner agrees to defend. indemnify, and hold harmless the Carrier and the Vessel from and against any claim, liability, loss, damage, costs and/or expense whatsoever which the Carrier, the Vessel, its servants, agents or independent contractors and its or their employees may incur, suffer or be put to arising out of any act, negligence, omission or default by that Rider. The Rider will be an employee of the Yacht Owner, not of the Carrier. The Yacht Owner warrants that the Rider will perform his or her duties, and conduct himself or herself in a workmanlike and professional manner and will not ac negligently.

      b.      The Rider will inspect the Yacht, its securing and its contents during the voyage. The Rider will promptly report to the Vessel's crew any need to adjust the system that secures the

Yacht to the Vessel. The Rider will be responsible to inspect and adjust where necessary the systems used to secure the appurtenances and contents of the Yacht.

      c.      In the event the Yacht Owner chooses to nominate one Rider to accompany the Yacht during the period of transportation, the Yacht Owner and the nominated Rider shall each complete and sign the relevant Indemnification Forms, which will be deemed fully incorporated into the Contract. If the Carrier agrees that the Yacht may be accompanied by a Rider, this Section 21 shall be applicable to each additional Rider. The Carrier shall not be liable for any damages that may result from the impossibility of a nominated Rider to accompany the Yacht, for whatever reason, and it is understood that the Vessel Master has final discretion whether to allow a Rider to accompany the Yacht.

      d.      The Yacht Owner warrants that Rider will possess all necessary and valid papers, visa or other documents to enter the country of destination, or any country that will be visited during the voyage. The Yacht Owner will indemnify, defend and hold harmless the Carrier and the Vessel for any failure to comply with immigration requirements (or any other requirements which may prevent Rider from entering the country of destination).

      e.      While on board the Vessel the Carrier shall provide free meals to the Rider. Opting not to nominate a Rider or the impossibility for a nominated person to accompany the Yacht shall not entitle the Yacht Owner to either compensation or a reduction in the Total Contract Price.

      f.      The Yacht Owner shall be liable for any and all damages, including physical damage, personal injury and all economic losses to third Parties caused by or contributed to the Yacht Owner's Rider. The Yacht Owner undertakes, and is required, to purchase insurance to cover the risks it has assumed under Section 21, in the amount of $2,500,000 evidence of which shall be submitted at the time of booking passage for the Yacht. Failure to provide such evidence of insurance obligates the Yacht Owner to purchase this liability insurance through the Carrier, which shall remain in effect until delivery of the Yacht, at additional cost to the Yacht Owner.

## Section 22:  Security of Ships and Port Facilities.

From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Carrier shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code. The Yacht Owner shall provide the Carrier with their full style contact details and any other information the Carrier requires to comply with this ISPS Code. Any loss, damage, expense, delay or additional cost incurred as a result of the Yacht Owner's failure to comply with this clause, including but not limited to, security guards, launches, tugs, port security fees, taxes and/or expenses, shall be for the account of Yacht Owner.

## Section 23:  Supply of Electricity to the Yacht by the Vessel.

      a.      In the discretion of the Vessel Master, electricity may be made available upon request of the Yacht Owner free of charge to the Yacht by the Vessel, however not before loading operations (including seafastening) have been completed and after the Vessel's deck is secured and furthermore subject to the Yacht Owner, in accordance with the form attached to this Contract, prior to loading, requesting the Carrier to supply electricity (as available on board the Vessel and

- 14 -

in limited quantity) to the exterior of the Yacht for connection to the Yacht's electrical system. The Yacht Owner is responsible for providing approved cable-end connectors as well as any qualified personnel to effect their connection and disconnection, it being understood that the Vessel's crew may not be engaged for such work.

b.     Provided further that the Carrier shall in no case be liable for the consequences of any electrical power failures or variations.

**Section 24:  Permits and Licenses.**

The Yacht Owner is responsible for obtaining and will pay for all permits and licenses and customs duties required with respect to the transportation (loading and discharging included) of the Yacht. The Carrier may render assistance with the above without releasing the Yacht Owner of its responsibility. Any time lost by the vessel due to Yacht Owner's failure to carry with its obligations hereunder to be paid by Yacht Owner at the demurrage rate as stipulated in Paragraph 10 above.

**Section 25:  Validity.**

If any term of this Contract is held to be null or void, the remainder of this Contract will remain in full force and effect.

Completely read and fully understood by Yacht Owner:

NANEA
_____
Yacht Name

F T Holdings LLC
_____
Yacht Owner

08/13/15     Seattle, WA
_____
Date and Place of Signing

By execution hereof, the individual listed above warrants that he/she is the Yacht Owner or is authorized by the Yacht Owner to execute this Contract on the Owner's behalf and to legally bind Yacht Owner to this Contract.

- 15 -

RAV004 0001 of132t70dy.003CC

## Raven Offshore Yacht Shipping, LLP

**Banking Information**

Please find below the banking information for wire transactions.

WIRE INSTRUCTIONS:

Raven Offshore Yacht Shipping, LLP
2148 Westlake Avenue North
Seattle, Washington U.S.A. 98109

Raven Offshore Yacht Shipping, LLP Incoming Wire Account:

BANK:                 Washington First Bank
                      1146 19th Street NW
                      Washington, DC 20036

ACCOUNT #:            4507088

A/B/A ROUTING #:  054001699

# EXPORT POWER OF ATTORNEY

### Exporter (U.S. Principal Party in Interest)/Forwarding Agent

---

EIN# _____          Corporation ☐     Individual ☐     Partnership ☐

Know all men by these presents, that _____, ("USPPI"),
(Name of U.S. Principal Party in Interest)

organized and doing business under the laws of the State/Country of _____ and

having an office and place of business at _____
(Address of USPPI)

hereby authorizes Raven Offshore Yacht Shipping, LLP, as Forwarding Agent, its officers, employees, and/or specifically authorized agents, to act for and on its behalf as a true and lawful agent and attorney of the USPPI for and in the name, place and state of the USPPI, from this date, in the United States either in writing, electronically, or by other authorized means to:

Act as authorized agent for Export Control, U.S. Census Bureau ("Census Bureau") reporting, and U.S. Customs and Border Protection ("CBP") purposes. Also, to prepare and transmit any Electronic Export Information or other documents or records required to be filed by the Census Bureau, CBP, the Bureau of Industry and Security, or any other U.S. Government agency, and perform any other act that may be required by law or regulation in connection with the exportation or transportation of any goods shipped or consigned by or to the USPPI, and to receive or ship any goods on behalf of the USPPI.

The USPPI hereby certifies that all statements and information contained in the documentation provided to the Forwarding Agent relating to exportation are true and correct. Furthermore, the USPPI understands that civil and criminal penalties may be imposed for making false or fraudulent statements or for the violation of any United States Laws or Regulations on exportation.

This power of attorney is to remain in full force and effect until revocation in writing is duly given by the USPPI and received by the Forwarding Agent.

IN WITNESS WHEREOF, _____ caused these presents to be
(Full name of USPPI)

sealed, signed and lawfully executed on _____.
(Date)

By: _____
(Signature)

Name: _____
(Printed Name)

Title: _____

U.S. Telephone Number of USPPI: _____

RAV004 0001 of132t70dy.003CC

## Raven Offshore Yacht Shipping, LLP

Request for Electricity

Vessel Name: _____

Vessel Length: _____

Vessel HIN: _____

The undersigned hereby requests that Raven Offshore Yacht Shipping, LLP, a Carrier, supply electricity (as available on board the vessel and in limited quantity) to the exterior of the Yacht identified above for connection to the Yacht's electrical system.

The undersigned understands he is responsible for providing approved cable-end connectors, as well as any qualified personnel to effect their connection and disconnection, it being understood that the Vessel's crew may not be engaged for such work.

The undersigned further understands and agrees that the supplying of such electricity is in the discretion of the Vessel Master.

By: _____
                          (Signature)

Name: _____
                          (Printed Name)

Title: _____

U.S. Telephone Number of USPPI: _____

EXHIBIT 3

Page 2

**CODE NAME: "CONGENBILL" EDITION 1994**

**Shipper**

Raven Offshore Yacht Shipping LLP
2288 W Commodore Way, Suite 205            Seattle,
WA USA 98199

**BILL OF LADING**                    B/L No. THZS23615PORCHE1

**TO BE USED WITH CHARTER-PARTIES**

Reference No.

**Consignee**

F.T. Holdings, LLC,                            #18
2300 Canoe Cove Rd,                         North
Saanich, BC, Canada V8L 3X9

**ORIGINAL**

**COPY**

**Notify address**

Same as Consignee

| Port of loading | Vessel |
|---|---|
| Port Everglades, FL | M/Y THORCO CLAIRVAUX |

**Port of discharge**

Chemainus, BC

**Shipper's decription of goods**

1 Yacht 2001 87' Queenship
M/Y "Nanea"
HIN: QCWHG302M01A

AES: X20150901025835
"All yachts are used, second hand."

**Gross Weight**

SAID TO WEIGH
82 MT

ON BOARD DATE September 02, 2015

"Cargo being loaded on deck on shipper's risk and account. Carrier is not responsible for any damages or loses may arise."

"THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE
WITH THE EXPORT ADMINISTRATION. DIVERSION CONTRARY TO U.S. LAW PROHIBITED."

"This document is an express Bill of Lading and no Originals are issued or required for release of cargo at the
port of discharge. All parties involved in this Bill of Lading agree that cargo will be released to the party named
as Consignee without further proof of ownership."

(of which                              on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated   12-Aug-15

**FREIGHT ADVANCE.**
Received on account of freigh

Time used for loading  .................... days  .................... hours.

**SHIPPED** at the Port of Loading in apparent good order and
condition on board the Vessel for carriage to the
Port of Discharge or so near thereto as she may safely get the goods
specified above.

Weight, measure, qualtiy, quantity, condition, contents and value un-
known.

IN WITNESS whereof the Master or Agent of the said Vessel has
signed the number of Bills of Lading indicated below all of this tenor
and date, any one of which being accomplished the others shall be
void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
|  | Port Everglades, FL 09/06/15 |
| Number of original Bs/L | Signature (for the master) |
| 0/0 (ZERO) |  |
|  | INCHCAPE SHIPPING SERVICES (as agents only) |
|  | FOR AND ON BEHALF OF |
|  | MASTER:   M/V THORCO CLAIRVAUX |

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 — the Hague-Visby Rules — apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.

General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent notification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgium Commercial Code, Part II, Art 148.

(4) New Jason Clause.

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.

If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf

BL 95161

FT HOLDINGS LLC                        NA
680 SPRING HILL ROAD

LIMA MT 59739 US

                                            File #:4-95161
FT HOLDINGS LLC                    J P REYNOLDS CO INC
18  2300 CANOE COVE RD             101 SE 21ST STREET
                                   FORT LAUDERDALE FL 33316
NORTH SAANICH  V8L3X9 CA
                                   Alberta

Same as above



        Vy#-23615
THORCO CLAIRVAUX       PORT EVERGLADES, F

VICTORIA HARBOR, O                                        *


        1      2001 QUEENSHIP SPORTFISH            9000K
                                                  19841L




PAGE: 1 OF 1           AES X20150901025835




Page 1

Form Approved OMB No. 1651-0001

| 1. Name of Vessel | | 2. Nationality of Ship | 3. IMO No. | 4. Voyage No. | 4. Page No. | U.S. DEPARTMENT OF HOMELAND SECURITY |
|---|---|---|---|---|---|---|
| M/V THORCO CLAIRVAUX | | Antigua & Barbuda | 9535591 | 23615 | 1 of 1 | Bureau of Customs and Border Protection |

**U.S. DEPARTMENT OF HOMELAND SECURITY**
Bureau of Customs and Border Protection

**INWARD**
**CARGO DECLARATION**

19 CFR 4.7, 4.7a, 4.8, 4.33, 4.34, 4.38, 4.84, 4.85, 4.86, 4.91, 4.93, 4.99

| 5. Name of Master | 6. Last Foreign Port Before U.S. | 7. Port of Discharge | 8. Date of Departure from Port of Loading | 9. Time of Departure from Port of Loading (Zulu) |
|---|---|---|---|---|
| Y. Khudyakov | | Chemainus, BC | 9/3/2015 | 19:30 |

| 10. Shipper (SH) Consignee (CO) Notify address (NF) | 11. Bill of Lading No. | 12. Marks and Nos. (MN) Container Nos. (CN) Seal Nos. (SN) | 13. No. & Kind of Packages Description of Goods Hazardous Materials (Must Provide UN Code) | Answer Col. 14 OR Col. 15 | | 16. First Port / Place Where Carrier Takes Possession of Cargo | 17. Foreign Port Where Cargo is Laden on Board |
|---|---|---|---|---|---|---|---|
| | | | | 14. Gross Wt. (lb. or kg.) | 15. Measurement (per HTS) | | |
| Shipper (SH) Raven Offshore Yacht Transport LLP 2288 W. Commodore Way, Ste 205 Seattle, WA USA 98199 Consignee (CO) F.T. Holdings, LLC #18 2300 Canoe Cove Road North Saanich BC Canada V8L 3X9 Notify address (NF) Same as above | THZS23615PORCHE1 | | 1 Yacht 2001 87' Queenship M/Y Nanea  AES: QCWHG302M01A | 82 MT | | Port Everglades, FL | Port Everglades, FL |

**PAPERWORK REDUCTION ACT NOTICE:** This request is in accordance with the Paperwork Reduction Act. We ask for the information in order to carry out the Customs laws of the United States. This form is used by vessel carriers to list all inward cargo on board and for the clearance of all cargo on board with commercial forms. It is mandatory. The estimated average burden associated with this collection of information is 10 minutes per respondent or record keeper depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Bureau of Customs and Border Protection, Information Services Branch, Washington, DC 20229 and to the Office of Management and Budget, Paperwork Reduction Project (1651-0001), Washington, DC 20503.

CBP Form 1302 (02/03)

# EXHIBIT 4

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

F.T. HOLDINGS, LLC, a Washington
limited liability company,

NO.:

11

Plaintiff,

v.

12
13
14

RAVEN OFFSHORE YACHT SHIPPING,
LLP, a Delaware limited liability
partnership, and RICHARD GLADYCH

**NOTICE TO PLAINTIFF OF
REMOVAL TO FEDERAL COURT**

15

Defendants.

16  **TO:          PLAINTIFF F.T. HOLDINGS, LLC**

17  **AND TO:    WILLIAM F. CRONIN, PLAINTIFF'S COUNSEL OF RECORD**

18        You are hereby notified that on March 28, 2016, Defendants Raven Offshore Yacht

19  Shipping, LLP and Richard Gladych filed a Notice of Removal of the action originally brought

20  by Plaintiff in the Superior Court of Washington for King County, Cause No. 16-2-04533-2 SEA,

21  with the United States District Court for the Western District of Washington.  Therefore this

22  action has been removed from the Superior Court to the United States District Court.  A copy of

23  the Notice of Removal is attached hereto as Exhibit A, and herewith served upon you.

24  \\

25

26  \\

NOTICE TO PLAINTIFF OF
REMOVAL TO FEDERAL COURT - 1

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY
COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555
FAX: 206-838-7515

1    DATED this 28th day of March, 2016.

2

3                                    NICOLL BLACK & FEIG PLCC

4                                    /s/ W.L. Rivers Black
                                     W.L. Rivers Black, WSBA No. 13386
5                                    Jeremy B. Jones, WSBA No. 44138
                                     Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY
COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555
FAX: 206-838-7515

1

### DECLARATION OF SERVICE

2

I, Katherine Smith Jacobs, hereby declare and state as follows:

3

I am a citizen of the United States and a resident of the State of Washington; I am over

4

the age of eighteen years and not a party to the within action; my business address is Nicoll

5

Black & Feig PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101.

6

On the date set forth below, I caused to be served

7

- **NOTICE TO PLAINTIFF OF REMOVAL TO FEDERAL COURT**

8

in the within matter by arranging for a copy to be delivered on the interested parties in said

9

action, in the manner described below, addressed as follows:

10

11

William F. Cronin, WSBA No. 8667

12

Corr Cronin Michelson Baumgardner
Fogg & Moore LLP

13

1001 Fourth Avenue, Suite 3900

14

Seattle, WA 98154-1051
Telephone (206) 625-8600

15

Fax (206) 625-0900
*Attorneys for Plaintiff*

| | |
|---|---|
| __x__ | VIA HAND DELIVERY |
| _____ | VIA OVERNIGHT MAIL |
| _____ | VIA FACSIMILE |
| _____ | VIA U.S. MAIL |
| __x__ | VIA E-MAIL |
| _____ | VIA ECF |

16

17

I declare under penalty of perjury that the foregoing is true and correct, and that this

18

declaration was executed on March 28, 2016 at Seattle, Washington.

19

20

Katherine Smith Jacobs

21

22

23

24

25

26

NOTICE TO PLAINTIFF OF
REMOVAL TO FEDERAL COURT - 3

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY
COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555
FAX: 206-838-7515

**THE HONORABLE JEAN RIETSCHEL**

1

2

3

4

5

6

7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
8            IN AND FOR KING COUNTY

9 | F.T. HOLDINGS, LLC,  a Washington
limited liability company,
10
|                                          No. 16-2-04533-2 SEA
11 |                     Plaintiff,
|                                          **NOTICE OF REMOVAL**
| v.
12 |
| RAVEN OFFSHORE YACHT SHIPPING,
13 | LLP, a Delaware limited liability
partnership, and RICHARD GLADYCH,
14 |
15 |                     Defendants.

16

17       YOU ARE HEREBY NOTIFIED that on March 28, 2016, defendants Raven Offshore

18 Yacht Shipping, LLP and Richard Gladych, filed in the U.S. District Court for the Western

19 District of Washington their Notice of Removal of the above-captioned cause of action.

20 A copy of the Notice of Removal is attached hereto.

21

22       DATED this 28th day of March, 2016.

23
                            NICOLL BLACK & FEIG PLLC
24

25                          /s/ W.L. Rivers Black
                            W.L. Rivers Black, WSBA No. 13386
26                          Jeremy B. Jones, WSBA No. 44138
                            Attorneys for Defendants

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

## DECLARATION OF SERVICE

I, Katherine Smith Jacobs, hereby declare and state as follows:

I am a citizen of the United States and a resident of Seattle, Washington; I am over the age of eighteen years and not a party to the within action; my business address is Nicoll Black & Feig PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101.

On the date set forth below, I caused to be served:

- **NOTICE OF REMOVAL**

in the within matter by arranging for a copy to be delivered on the interested parties in said action, in the manner described below, addressed as follows:

| William F. Cronin, WSBA No. 8667<br>Corr Cronin Michelson Baumgardner Fogg &<br>Moore LLP<br>1001 Fourth Avenue, Suite 3900<br>Seattle, WA 98154-1051<br>Telephone (206) 625-8600<br>Fax (206) 625-0900<br>*Attorneys for Plaintiff* | __x__ VIA HAND DELIVERY<br>_____ VIA OVERNIGHT MAIL<br>_____ VIA FACSIMILE<br>_____ VIA U.S. MAIL<br>__x__ VIA E-MAIL<br>_____ VIA ECF |
|---|---|

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 28, 2016 at Seattle, Washington.

_____
Katherine Smith Jacobs

DEFENDANTS' NOTICE OF REMOVAL - 2